Our last case is number 20-10770, Bradley Dorman, versus the chaplain's office. And Ms. Litwin, whenever you're ready. May it please the court, Ashley Litwin on behalf of Bradley Dorman. Mr. Dorman stated a valid claim for relief under section 1983 under the Religious Land and Use and Institutionalized Persons Act, also known as, I believe, RELUPIA, that's what I'm going to go with today. Your pronunciation is as good as ours. Okay. Thank you, Judge. Under the First Amendment and under the Due Process Clause. Can I ask you a record-based question on the due process issue? Yes, Your Honor. Okay. And I'm going to ask your colleague the same thing. The document that was filed about the notice. Yes. Pretty weird. Yes. Right? Because it's either a really, really, really bad and insufficient, possibly insufficient notice if it's really appeared that way in the kiosk, or it's a document that just simply had all sorts of formatting errors and somebody filed it incorrectly. What is your take on that issue? Because it's almost, it's potentially unintelligible in the way that it was filed by the defendants. Yes, Your Honor. The attachment to the motion to dismiss that was before the district court, which had the I mean, it was unintelligible to even find out it was Passover. I believe that that's an issue as to, we don't know what notice was actually posted because there was no testimony. I mean, at best, the appellees can claim that that was an error as to what they attached. Well, their brief, their brief has it in regular English prose. Well, yes, Your Honor, because they, in their brief, they attached a different motion to dismiss previously before the case was administratively closed. And then when it was reopened, they filed a new motion to dismiss, which is what was ultimately ruled upon. So you have both notices in the record? Yes, Your Honor. But the original notice, the notice that the appellees filed was not the notice attached to the motion to dismiss that was actually ruled upon. The case was administratively closed. Right after the case was reopened. When it was reopened, a new motion to dismiss was filed and attached to that motion to dismiss was this notice that was impossible to read. It was illegible. Did anyone ever go back to the district court or make the argument in the district court that the defect here in the notice was that it was illegible? Your Honor, there wasn't an opportunity for that. The motion to dismiss was filed and then it was granted. So that's exactly what we would like to do. Go back on remand and explain that the notice was illegible, to explain that the notice was illegible. I mean, the argument that was made by Mr. Dorman in the district court was that he never saw any notice whatsoever. So he didn't know if it was legible or illegible. Right. See, I understood that there were different arguments that your client had made before you even got into the case. And we very much appreciate that you came in later taking on this appointment. But on round one, when the complaint was filed by your client, pro se, the right notice was included. By right, I mean it was legible. In the original motion to dismiss, Your Honor? Yes. Yes. It was legible. Okay. So the district court had in front of it, let's call it the clear notice rather than the gibberish that was filed later. Yes, Your Honor. That's what he ruled on. Well, no, Your Honor, because he specifically, the court, even in the motion in his order where the district court grants the motion to dismiss, the district court cites to docket entry 53, page 11, which is the illegible notice. So no, the district court was not ruling upon the legible notice. Your position, whether it's correct or not, at the end of the day, your position is that what was ruled upon in the motion to dismiss was everything that transpired after the case got reopened. Yes, Your Honor. And that everything was, once it was administratively closed, it was no longer before the court. It was then refiled and that's what was before the court. Nothing would have prevented the district court from reaching back and saying, you know, this is obviously a formatting error. You filed the correct one the first time. I'm going to go with the first one. But your position is that even if that could have been done, it wasn't done here. Yes, Your Honor. It was not done here. Exactly. And also there was no hearing to determine, you know, somebody could have testified to say this was the notice that was presented, not the one that was filed. We also don't know when the notice was posted. We don't know for how long the notice was posted. So even if the correct notice was posted, there are still lots of issues with whether or not that was sufficient. Let me ask you something. I took your client to say, among other things, that the problem here was not that the notice was illegible. That only comes up on round three, if you will. But the notice itself was defective because it was on the computer screen at the kiosk and rather what the chaplain and the warden were supposed to do was to print it out in hard copy and paste it to the wall. And that failure to give hard copy notice is why it violated RLUIPA and the First Amendment. Is that not what he said at least to begin with in this case? Your Honor, yes. That's part of his argument. I mean, I think in essence what he was saying was he didn't receive notice and that's what made the notice not appropriate. Right. But the question here before us is not whether he received it or not, but whether they took all reasonable steps to convey notice. He might have buried his head in the sand and look, he doesn't cry foul until the third day of Passover. So there was no way for him even to get access to a Seder on the first or the second night. Well, Your Honor, a few things. I mean, first of all, in 2017 he was told that he couldn't sign up until April. So April 1st, 2018 is when he signs up. Yes, that was on the second day of Passover and the third night. But in Alio v. West, in that case, the court explains that because religious services are done by people that observe Passover, they're not allowed to commute during those days. And therefore, the Seder in that facility was on the third night of Passover. Can I go back for a second? And I just want to make sure I understand the appellant's arguments in this court. The first argument is the notice on a computer screen at the kiosk is no good. It should have been printed out in hard copy, right? That's one argument made. Yes, Your Honor. That's still before us. Yes, Your Honor. But I believe it's also what he said in his initial complaint and what he complained of was he did believe that because he signed up for the 2017 Passover, that he should have been personally told about it as well. I just want to make sure I understand all the arguments. Yes, yes. Those are the two notice issues. The second argument is whether it was on the screen or not, because he applied once before in 17, they were obliged to hand deliver the notice to him. Or just let him know in some- In some direct way, they had to say. As they've done in many other cases, Your Honor. And the third argument, if I have it right, is that the notice itself was illegible. Yes, Your Honor. So those are the three arguments. I'm just trying to find out what did the warden do that violated RLUIPA and the First Amendment? That summarizes the totality of what the chaplain did wrong and the warden did wrong? Yes, Your Honor. Or is there anything else? Well, as to the notice, and then the substantial burden would be that because of those failures, Mr. Dorbin was prohibited from any participation in celebrating in Passover at all. Right, but those are the three things that triggered the violation of RLUIPA and triggered the violation of the First Amendment. Yes, Your Honor. It is also the substantial change in policy. So it's when he, in 2017, he tried to sign up in March and was told he was not allowed to, he could only sign up in April. So then in 2018, when he goes to try to sign up in April, he's told he actually had to preregister in February. So it's- Can I ask you this question? Why would it be unreasonable to require someone who wanted to celebrate Passover or Ramadan or something like that to at least give the prison some notice so they could accommodate them? I mean, isn't some notice permissible? Your Honor, it's not unreasonable in every case. We're only arguing that in this case, because he did not know, he was unable to comply. And that even, let's say it was legible, this notice that was on a screen, that is one line in the middle of a pamphlet about something completely different, you would have to be looking for it. And they're requiring a preregistration deadline of February. When Passover is in April. So we don't know even when they put that notice up. Was it up in January, which is four months before Passover? Who would be looking for that? No. Was it up for a day? Was it up for a week? No record. And you're right. The record is silent on that. His claim for damages was dismissed at an earlier point in the proceedings, right? I'm so glad you asked me that, Judge. Because in reviewing it, I don't actually think it was. So there was an R&R by Magistrate Judge White, where he recommended, the court recommended dismissing the damages claim. But then Judge Altanaga, who was the judge at that time, in her order, she adopted the R&R only in part, which is docket entry 10. And she says that she believes that it's not the right time to get rid of damages, and that it should be something dealt with at the end of the case. So you think that the damages claim, should you prevail in this appeal, is at least theoretically still available to him? Yes. Pending further proceedings. Pending further procedures. And there's been changes in the law since then also, as to what damages are allowed, which I think would be an interesting issue for the district court to determine. In terms of injunctive relief, though, what injunctive relief can be, if you agree that going forward, forgetting about the alleged pass violation, if you agree that going forward in response to Judge Marcus' question, you can require some notice be given by inmates, right to the facility, what sort of an injunction is a district court supposed to craft for the next Passover? Well, it would be that notice has to be given to everybody who celebrated Passover the year before. Personal notice? That is a possibility. I mean, that would be something the district court would decide if that's too onerous. Right. The question, though, counsel, is whether the Constitution requires it or RLUIPA requires it. It might be nice, but the question here, we're not running the prison. We're asking whether what they did violated the Constitution or RLUIPA. Is it your view that RLUIPA or the Constitution of the United States requires that a prison personally notice each and every inmate rather than posting it in some reasonable way, whether in hard copy or on a computer screen or both, if someone had executed that option in a preceding year? Well, Your Honor, the Constitution requires meaningful notice, and the question obviously becomes what is meaningful notice, right, under the due process clause generally. I certainly don't, my position certainly is that putting it on a computer screen three months before Passover in one line, whether legible or not, is not meaningful notice. So the injunction could be something requiring a different kind of notice. That could be a hearing before the district court to determine what notice is required. But currently, I mean, to your point also, as far as injunctive relief is concerned, we don't know what the BOP policy is currently regarding pre-registration, non-pre-registration. Understood, and I probably shouldn't have asked that question to get you off on that tangent. Let me ask just the one follow-up. I was curious about this. He was indicted in 2015, if I have the record right. We're in 2021. Yeah. Is he still being held awaiting trial on a murder charge that goes back six years? Is that right? Your Honor, I don't actually, I've not looked into his criminal case at all, to be honest. I only know that he's still in the same institution as far as I'm concerned, as far as anything I know. But the reason I asked the question is, of course, to the extent you're seeking prospective injunctive relief, if he isn't there, then he certainly wouldn't have standing. He would certainly have standing to raise a question of damages, but he would not be in a position to cry foul about how they go about their policies in the future. And that's why it just struck me. The charge was in 2015, and if you look at the docket sheet, which I did, he's still there. Yeah. And there's no indication that your client was ever tried for murder over the last six years. At least there's nothing in the record that answers that, and I was just curious if you knew. Your Honor, yes. I don't. I mean, I really didn't look into his criminal case. I assumed if he was moot that I would have been told that everything was moot, because the case law is very, very clear on that. Thank you. All right. Thank you very much.  Ms. Klober. Good morning. May it please the Court. Good morning. I'm Deborah Klober from Hallexer, Pettison, Schwamm, and Fort Lauderdale on behalf of the chaplains at the Broward Sheriff's Office. Okay. So let's start where I started with Ms. Litwin, which is the notice. Yes, Your Honor. The record's a little bit messy. The record is messy, Your Honor. The notice that was originally filed with the original motion to dismiss was a gibberish notice. Trial counsel recognized that, and on two separate occasions did a notice of filing the proper notice. It's my understanding that was an uploading problem when he tried to screenshot the screen from the kiosk. But he did, on two separate occasions, file separate notices of filing with the correct notice. Where can we find those? You can find those, I believe it's 36 and 38, docket entries 36 and 38 in the record. And that was before the district court ruled? So Mr. Dorman tried to bring this case up to this court on two other occasions before this current one, and each time the court administratively closed the file, this court sent him back and said, Mr. Dorman, we don't have jurisdiction over your case yet. So, those were all in the record before the court made the ultimate ruling that's at issue before. But those two docket entries, those two filings that contained the correct, what you say is the correct notice, those preceded the gibberish notice that was filed? No, first the gibberish notice was filed with the first motion. Her view is different. Her view is the gibberish motion was filed on this round of litigation. It was again filed on this round. So you have two gibberish, two good. Correct. Correct, Your Honor. Correct, Your Honor. Is the BSO getting its money's worth? I didn't handle the case at the trial level, Your Honor. I was asked to come in and handle the appeal. I understand your question. It is a record. It's a motion to dismiss, and common sense tells you, right, that it's probably the one with the regular English prose. But it's a motion to dismiss, and if you're the movant, and again, I'm not saying you personally, but if the BSO is the movant, it's got to put the right document in front of the district court, and if there are four versions, two which look one way and two which look another way, that creates problems for us as an appellate panel, at least for me. I don't want to speak for myself. You are correct, Your Honor. It creates problems for us as the litigants as well. It's a challenge. I mean, you could have filed an affidavit that said, listen, we're very sorry. We filed two gibberish notices, but they were the result of a formatting error.  Understood. But in the brief, Your Honor, we did cite the records location. I know, but your brief is not evidence. Correct. You're correct, Your Honor. This was a challenge. But the fact of the matter with respect to the notice is that Mr. Dorman acknowledged that he never saw it. So while I understand your point about the record, and a record should be appropriate and accurate and correct, I don't think it makes a difference. Yes, but if his seeing it or not seeing it doesn't determine the adequacy of notice under due process. Correct, Your Honor. Right? It's what was posted. And if what was posted was the gibberish, he's got an argument that whether he saw it or not, that was inadequate notice under the due process clause, because you can't make sense of it. That's correct. If it's the other one, he's got a much harder road ahead of him. That's correct, Your Honor. Which one do we pick? The district court cited to the gibberish. The district court cited to the gibberish in its ruling, but we believe that the record reflects that the actual notice. No, what do we do? The district court relied on something else. That the record was corrected to have the actual notice. And I think that Judge Marcus has clarified Mr. Dorman's argument on appeal, that we're not really dealing with a suggestion by Mr. Dorman. Could I just stop you for one moment to ask one additional question on the line of questions that Judge Jordan was asking? Yes, Your Honor. Two bad notices were filed and two good notices. By bad, I mean illegible. By good, I mean legible. Four of them were presented to the district court. He had in front of them all of them. Correct, Your Honor. I take it his ruling was based on a notice that was legible, not illegible. He cited to the motion to dismiss in the order granting the motion to dismiss. The magistrate judge had actually gone through the history of the case and all of the versions up until we got to the current motion to dismiss, which was the second attempt now. Mr. Dorman had tried to appeal twice. So a number of the documents in the record were referenced in the magistrate's. I guess what I'm asking is, did either the magistrate judge or the district court struggle with, deal with, and resolve which was the right notice? Not at all. Mr. Dorman never raised the question that there was an illegible notice posted for his review. So we have to assume implicitly that the trial court or the magistrate judge was operating on the legible notice, but we, based on what they said, but it's just not clear from anything that they did say. Correct, Your Honor. Thank you. The notices of filing that were in the record that filed the correct legible notice did specifically say that they were designed to correct an exhibit that had been improperly attached. Okay. Next question. Yes, sir. Still on the notice issue, but a different aspect of it. And I understand that this is maybe not something that Mr. Dorman raised, but we have to write an opinion on what notice a prison facility can require of its inmates to participate in certain religious ceremonies, right, or dates. There is nothing in the record about when the notice was posted. Not that there could have been, because you're operating on a motion to dismiss, and you can't really introduce anything that's evidentiary that contradicts the complaint unless you convert it to a motion for summary judgment. So I'm not blaming you or your predecessor counsel for that. My question is, what do we do with that vacuum in the record about when the notice was posted? So for example, if the notice was posted the day of, that might be problematic, right? If the notice was posted on the 45th day, and you're supposed to provide notice that same day, that might be a problem. Perhaps. And that's one of the challenges we have here. Even if Mr. Dorman is correct and his rights were violated, how does the court fashion a remedy when we're on a motion to dismiss and we haven't done any right? Well, we're not worried about remedy now. What the policies or procedures are. We're not worried about remedy now. The only question is whether or not the complaint states a claim so that it can go forward. But we don't know when that was posted. His complaint says nothing about it because his complaint says, I never saw anything, I was never told anything, and then you introduce the notice. But there's nothing in the notice itself that has a date on it or anything. So what are we supposed to do with that vacuum in the record? Well, I think the quick answer to that question is that Mr. Dorman did have notice that he had to pre-register for Passover. He did it the year before. And he did it on the- Different policy. There was no policy. We don't know what the policy is. So it's different. We don't know if the policy changed. He says it changed. He says you- He says it changed because you're treating me different this year than you treated me last year. Because the last year they told him, don't file so early, file later. That's not what it was this year. But he registered in advance of the holiday on the kiosk. Understood, that's what he did personally, but that doesn't go to the policy. If you accept his complaint, the policy changed from one year to another. Whatever the policy was the year before, it was not the policy that existed now. Because the year before, had he registered six weeks or seven weeks before, they told him too early, come back to us a little bit later, closer to Passover. So if you accept his complaint, the policies are different. Whatever the first year's policy might have been, it's different from this one. But a couple of other things are different. The date of Passover is different. And the fact that Mr. Dorman's request came too late is different. Mr. Dorman- That second part, I think, is very important to your case. But the first part, I'm not so sure about. Mr. Dorman, in fact, when he went to register on the, in 2018, his original post on the kiosks, this is now the third day of Passover, says please sign me up for the Passover diet and service, when does the Passover diet start? This is on day three of Passover. And that's when the chaplain tells him that you needed to sign up by the 14th. And his next comment, and his next response on the kiosk is, I signed up last year, the first week of April. When did the policy change? He's implying that the policy changed because this is the week when he applied last year, but he doesn't know the date of Passover and the fact that it's moved this year. If he had asked a week before Passover in 2018 like he had in Passover 2017, we would be having a different issue before the court because he would have been on time, he would have done what he did last year, and perhaps some policy change might have made a difference. But here, he was aware that he needed to register. He was aware that he needed to do it through the kiosk. He just didn't do it in time. He makes three claims. He says, as for RLUIPA and the First Amendment Free Exercise Clause, he's plausibly alleged a violation of each based on three things. I'd like you to address each of those three things. First he says, the notice was no good, that is to say it violated RLUIPA and the First Amendment because computer notice is no good. What the warden and the chaplain were required to do was to print it out in hard copy and post it on the wall. And anything less violated the First Amendment and RLUIPA. That's his first argument. The second argument is, the notice was deficient in addition to that. Because since he applied earlier, they were required to personally notify him. Whether giving him something in writing or telling him something, he was entitled to personal notice. And their failure to do that also violated RLUIPA and violated the Constitution. That's the second claim. The third claim is the notice was deficient because it was illegible. That's kind of a post hoc argument that comes up before us. It was never flagged, raised, argued, or disposed of by the magistrate judge or the trial judge. So we've already talked at length about that one, the gibberish. But let's talk about the other two arguments that he makes. Notice was no good because the warden was obliged to print it out in hard copy. And the failure to do that violated the Constitution. And the notice was no good because since he applied earlier, he should have been given personal notice. Anything they put on a computer or posted on a wall, even doing both would not have been enough to comply with the law. What are your answers to those on a motion to dismiss? So we start on the notice issue with an understanding under any of these tests, under the RLUIPA, under the First Amendment, that these jail administrators get discretion in how to manage and how to make decisions and policy decisions about how to control inmates, how to address safety, how to address finances. So my first response to both of those questions is that we've got to give deference to these officials. And unless there is some policy that substantially burdened Mr. Dorman's ability to participate in Passover, they get the discretion in how to handle that. There is no case law in the RLUIPA context addressing the notice issue. Neither council were able to find anything addressing notice under that, which is why we've evaluated in our briefs from a couple of different angles, from the RLUIPA standard, from the First Amendment standard, and also from a due process standard. But the fact of the matter is that Mr. Dorman knew that he needed to provide advance notice before the holiday. So there was no substantial burden created by the government that prevented him from participating in 2018. It was Mr. Dorman's own actions in belatedly requesting to participate. And it's clear under the case law, and council hasn't argued today that otherwise, that having a pre-registration requirement is reasonable, and it's acceptable, and there's certainly nothing unconstitutional, nor does it create a substantial burden. In respect to the notice, we would submit that under any of these tests, when there's no dispute that the deadline was posted, he had access to it. He knew how to access it, and request to participate it, and did it through the kiosk the year prior. He's really complaining that he didn't have notice, but he did, and he just overlooked the fact that Passover didn't start on the same day. He overlooked when Passover started. We don't know what would have happened if Mr. Dorman had asked a week before to participate. We just don't know, because we don't have the record here about what the policy truly was, whether it was changed, how it was changed, and when it was changed. But under the due process analysis, a specific notice, and the Mullane case is really the only one that we focused on with respect to due process. And that case was very factually dissimilar. It involved a joint investment fund that was going to be investing people's money in it, that was being held in trust, and they didn't properly provide these people with notice because they posted in the newspaper, then they invested the money. And then when they invested the money, they sent them notices by mail. But what Mullane says that I think is significant is that you do get personal notice, and here it was an example of by mail, where practicable and depending on the circumstances. And the suggestion that these jail administrators should be required to go religion by religion and individual inmate to individual inmate is really gets the court into the area where these administrators have discretion. And Judge Marcus, you are correct that Mr. Dorman is in fact still in the Broward County Jail. But I would also point out that Mr. Dorman is not the usual, he's not the usual inmate. Most of these inmates are in and out. So to put such an onerous requirement on the government, on these chaplains, to put notice to individuals when they're coming and going and being transferred and transferred in and transferred out on a regular basis is beyond the scope of what the law would allow when each of these standards provides them with great discretion. So he's in the same jail six years awaiting trial? Indeed, I believe he is. All right, Ms. Klobber, thank you very much. Thank you, Your Honor. So we would request an affirmance. So first of all, as to what has to Mr. Dorman being late for the deadline in 2018, I want to clarify what happened in 2017. In 2017 when Mr. Dorman tried to sign up in March, he was told no, you have to sign up for Passover in April. So Mr. Dorman- That's because Passover was in April. Well, yes, Your Honor, but in his mind, therefore, that's what he was told the policy was. Doesn't a person in Mr. Dorman's position have the obligation of finding out or figuring out when the religious observance takes place during a given year? Your Honor- Had he asked when Passover was over, he wouldn't have a claim, right? Or you think he still would have a claim? No, Your Honor, you're saying had Passover been mid-March? Because I mean- No, no, no. This time around in 2018, had he requested the accommodation, the diet, etc., etc., three days after Passover was over, would he have a claim or not? No, because of course, no, Your Honor, because at that point it would have been his own fault that the institution would not have been the one that deprived him of celebrating Passover. Part of their argument is based on the same theory, which is he asked too late. And it would be different if despite the 45-day notice requirement, he had asked even one or two days before Passover began, but he didn't. So the government says, and the district court suggested that a part of the Seder was over by the time that he asked. And so what could they have provided him, for example, as to the Seder meal on the third day? Assuming they could have gotten it to him that quickly. Well, a few things, Your Honor. I mean, first of all, Passover is not just a Seder. There's also food involved. Understood, understood. But he asked in part for- He asked for both, Your Honor. And so he was deprived completely and totally of celebration of Passover. I mean, there's numerous cases which have said, okay, you were deprived two Seder meals, but you were given five Seder meals. That's fine. It's a de minimis violation. Ramadan, you were not allowed to fast for four of the nights, but you were allowed to fast for the other nights. So that's a de minimis violation. But it's when you're deprived of everything. Nothing is given to you. You're given no way to celebrate your holiday. That becomes a substantial burden. And this is all- Because you're forced to forego. And again, to go back to Judge Marcus's question to refine the issues for us, this is all related to the diet aspect of Passover. That part of it, yes, Your Honor. Not to religious observance portion of Passover. Well, you're right. I mean, they're both religious observance. No, I know. And you can't pull them apart. But I understand. But he wasn't sort of, he wasn't prevented, for example, from going to a service. We don't know, Your Honor, because no record was created when the Seder was. No, no. I'm just looking at the complaint. He claims that he was, Your Honor. He says that he was not permitted to do any celebrations. And there was no record before the district court as to when the Seder was. As explained in the briefs in Aaliyah v. West, even though Passover Seders are traditionally on the first two nights of Passover, the court explained that in institutions, in that institution, for example, it's on the third night of Passover. So he would have signed up in time because- We don't, I mean, that's- Well, we don't know because there's no record. Well, we also don't know whether or not that's the policy of this institution either. Yes, Your Honor. We don't know, and which is why it should be remanded to the district. Before there's a finding that he was not substantially burdened because he signed up too late to attend the Seder, it should be remanded to the district court for a finding that he missed a Seder, that there was no Seder on the third night. He alleged he missed something, which is sufficient at the motion to dismiss stage. It should be the government's job. Oh, I'm sorry. I'm so used to that. It should be the defendant's job to come up and show something to the court and say, listen, the Seders were on the first two nights. He didn't miss anything, and there would still be the food issue. We don't know if a Seder plate was given to the defendants. I'm sorry, to the plaintiff, to the religious adherents, because no record was created if matzo was given. I know in some institutions they give grape juice for Passover. You know, we just don't know what was missed. Separately, I'd like to quickly switch to the other thing that was addressed, which is the discretion of prison administrators regarding notice. Again, I think it's really important that this was the motion to dismiss stage, and this would be the defendant's burden to come back and show what policies and procedures, why notice would be given the specific way that it was. I know that there's a discussion that Judge Marcus was asking regarding whether or not you should be required to tell everybody personally that had celebrated Passover in the past, whether that would be too much. That should be questioned before the district court. We know that it was easily done. We cited into the brief to numerous different cases where the chaplains specifically told every religious adherent about the holiday. For example, in Marshall v. Florida Department of Corrections, an unpublished case in the Southern District of Florida, the chaplain provided an order form to each inmate identified as Jewish to order Passover meals. Notably, a lot of these other cases discuss that the plaintiff knew about the change in policy. I think that's what's really, really important here. Your argument is not just based on personal individual notice, but also that the general notice could have and should have been done differently. Like, for example, the posting of a hard copy in the place where the computer kiosk was. Yes, Your Honor. We're arguing that the notice that was posted or how it was done, whether it was legible or illegible, was simply insufficient. And again, that there's not enough factors for us to understand when it was posted or how to know whether or not it was sufficient. And that the due process clause does require something that's reasonable that somebody could have seen. And the last thing I will say, just I wanted to give a citation because it wasn't in the briefs regarding in the court's order, docket entry 71, where the court did cite to the illegible notice, it is footnote one. All right. Thank you very much. Thank you, Your Honor. Again, as Judge Marcus said, we appreciate Mr. Seidel's mislead. When you guys taking on the case, we really do appreciate it. And we thank all of you for your arguments. Thank you, Your Honor. We are in recess. Stephanie.